JAMES P. KEMP, ESQUIRE
Nevada Bar No. 006375
KEMP & KEMP, ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110,
Las Vegas, NV 89130
(702) 258-1183/(702) 258-6983 (fax)
jp@kemp-attorneys.com
Attorney for Plaintiff Daniel Martin

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
* * *

| | |
|---|---|
| DANIEL MARTIN,<br><br>       Plaintiff,<br><br>vs.<br><br>CLARK COUNTY, a political subdivision of the State of Nevada; JOHN MARTIN in his official and/or individual capacities; MARCUS McANALLY in his official and/or individual capacities; DOES I-X.<br>       Defendants. | Case No.: 2:19-cv-01623-APG-DJA<br><br>**FIRST AMENDED COMPLAINT**<br><br>JURY TRIAL DEMANDED |

COMES NOW THE PLAINTIFF, by and through his counsel, JAMES P. KEMP, ESQ., of KEMP & KEMP, ATTORNEYS AT LAW, and states and alleges causes of action against the Defendant(s) as follows:

### I. JURISDICTION AND VENUE

The Court has jurisdiction over this case pursuant to 28 U.S.C. §1331 in that it arises under the Constitution, laws, or treaties of the United States, specifically 42 U.S.C §2000e *et seq.*, 42 U.S.C §1983, and 42 U.S.C §1981 the Civil Rights Act of 1964 and Civil Rights Act of 1866 as those Acts have been amended from time to time. All of the material events complained of herein took place in Clark County, Nevada. The court has supplemental jurisdiction of state law claims pursuant to 18 U.S.C §1367. The Court has personal jurisdiction over all of the parties in this case.

1

**II.     CLAIMS FOR RELIEF**

**<u>ALLEGATIONS COMMON TO ALL CLAIMS</u>**

1. This is a civil action for damages under state and federal statutes prohibiting discrimination and retaliation and to redress deprivation of rights under these laws, as well as claims under the common law of Nevada.

2. Plaintiff's statutory claims arise under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e et seq.; the Civil Rights Act of 1991, 42 U.S.C §1983, and the Civil Rights Act of 1866, 42 U.S.C. § 1981.

3. As Plaintiff's employers during the relevant time period, Defendants were engaged in operations and/or conducting business within the County of Clark, State of Nevada.  Defendant Clark County was engaged in activities affecting commerce and employed at least 500 employees in the two calendar years preceding the events in question.

4. As an employer in Nevada, and/or other states, Defendants are required to comply with all state and federal statutes which prohibit race and color discrimination, and retaliation.

5. Plaintiff, Daniel Martin, is a black African American male citizen of the County of Clark, State of Nevada, who was employed by Defendants, at their Department of Juvenile Justice Services, from approximately June 2007 until approximately August 2015 and again from October 2015 to January 31, 2018.  At all times mentioned herein the Plaintiff performed his work at or above a level that the Defendants had a reasonable right to expect.

6. Plaintiff has physical characteristics and skin color consistent with his race, ethnicity, and black African origin.

7. The individually named Defendants are all, upon information and belief residents of Clark County, Nevada.  They are all Supervisors and/or Managers of Clark County Department of Juvenile Justice Services.  At all relevant time periods set forth in this Complaint, the individually

2

named Defendants acted in an individual and/or official capacity in violation of the Plaintiff's constitutional and/or statutory rights and did so under color of law making them individually liable for their actions and/or making Defendant Clark County directly or vicariously liable for the acts and omissions of the individual Defendants in accordance with the law.

## FACTS

8. Plaintiff commenced his employment with Defendants in approximately June 2007 as a Juvenile Services Assistant. By the time of the events complained of herein the Plaintiff held the position of Juvenile Probation Officer II. As set forth above the Plaintiff had a break in service when he was previously wrongly discharged and then reinstated. However, Plaintiff was finally and again terminated form his position for false and pretextual reasons on January 31, 2018. Defendants, and each of them, falsely alleged that the Plaintiff was insubordinate and violated workplace policies which DO NOT EXIST and that he was absent from his post for 18 minutes when he went to get something to eat between his regular shift and an overtime shift which is a common and customary practice that Plaintiff was disciplined for when non-black, non-African-Americans routinely do without being disciplined or fired. Some examples of non-black, non-African American employees who engaged in similar behavior and conduct as Plaintiff and were not given any discipline or less severe discipline include, but are not limited to, the following: David Carlisle, Dana DeHessa, Joseph Whitaker, Vickie Meredith, and Robert Chiodini, Chris Stanek, Patrick Kelso, and James Webb. Further Gene Olewinski, Robert Hughes, Tony Rhynes are examples of non-African American employees who engaged in similar or far more egregious conduct with respect to the allegation that Plaintiff violated the non-existent policy of having to call out juvenile's dietary restrictions in the food line instead of relying on color coded wrist bands which was the policy in place and who were not disciplined or were not disciplined as severely as Plaintiff. In short the Plaintiff was not guilty of anything worthy of firing him

3

from his job and the termination was for reasons of retaliation and discrimination as alleged herein. Defendants disciplined Plaintiff, or more harshly disciplined Plaintiff, where non-African American employees were not disciplined or given lesser forms of discipline for the same or substantially similar conduct. This constitutes disparate treatment of the Plaintiff in violation of state and federal anti-discrimination and anti-retaliation laws including Section 1981 and Title VII.

9. For several years, dating back to approximately 2000 or 2001, the Plaintiff endured discriminatory and harassing conduct toward him from his Managers and Supervisors, including Defendants Martin and McAnally. Some of this is chronicled in the papers and pleadings on file with the court in Case No. 2:16-cv-2027–JCM–VCF in this court, particularly the Complaint in that case and any amendments thereto which is incorporated here by this reference pursuant to FRCP Rule 10(c)  The conduct of the Defendants was severe or pervasive and occurred over a long period of time. This discriminatory or harassing conduct was based in whole or in part upon race and/or color. Some examples of this discriminatory and retaliatory conduct by McAnally, that HE DID NOT DO TO NON-AFRICAN AMERICAN employees include, but are not limited to kicking the Plaintiff out of the workplace when Plaintiff was discussing a program related to Black History Month; Plaintiff was the only employee who McAnally did this to. McAnally would harass the Plaintiff about the dress code, singling him out when other non-African American employees would be blatantly be in violation of the dress code and they would not be reprimanded in any way. McAnally also dressed down the Plaintiff about not having a radio when the radio was on the charger because the battery had died which McAnally did not do to non-African American employees. McAnally maliciously defamed and spread a rumor that Plaintiff permitted officer Randolph Keebler to be beaten up by a juvenile; this was not true and McAnally knew it was false because Plaintiff was

4

working way on the other side of the building. When Plaintiff came into the unit supervised by McAnally, McAnally would create his own policies that were not department policies designed to single out Plaintiff to target him for discipline with respect to, among other things, the dress code and wrote up the Plaintiff for things that were not against dress code while white employees, including Gene Olewinski were not held to the same standard and not written up, for example, for wearing shorts to court (even though there was no department dress code policy forbidding the wearing of shorts to court). There more examples of disparate treatment that continued for many years and are too numerous mention. Plaintiff often complained about McAnally's disparate treatment of Plaintiff. He did so consistently for 16 years including a number of times within the four year period and 300 day period prior to the Plaintiff filing this lawsuit and filing his EEOC charge that is the basis for this case. McAnally would not stop the harassment and in some respects it got worse as time went on. This was continuing action for purposes of ant-discrimination statutes.

10. Plaintiff filed an EEOC charge and later a lawsuit in U.S. District Court (2:16-cv-2027−JCM−VCF) alleging race and color discrimination and retaliation. That case was ultimately resolved. However within several months of the resolution of that case the Defendants, and each of them, embarked on a course of further discrimination, harassment, and retaliation which resulted in the Plaintiff's discharge from employment for pretextual and false reasons when the real reasons are discrimination and retaliation. The Defendants, and each of them, bided their time, lying in wait, for any opportunity to fabricate and exaggerate a reason to discharge the Plaintiff from his employment as a means of retaliation and retribution for his participation in the prior EEOC process and/or his opposition to unlawful discrimination and retaliation that was the subject of case no. 2:16-cv-2027−JCM−VCF.

11. Defendant McAnally, as a Probation Supervisor over Plaintiff, in addition to the behavior listed

5

above would specifically target the Plaintiff and attempt to recruit others to say bad things about him to get Plaintiff into trouble. McAnally would make misrepresentations about the Plaintiff in his attempts to undermine and sabotage the Plaintiff's reputation. McAnally did not treat white or non-African American in a similar harsh and unfair way. Further, McAnally was a named defendant in Plaintiff's earlier lawsuit and had motive and opportunity to retaliate against the Plaintiff. McAnally acted upon this motive and opportunity and took steps to influence decision makers and secure Plaintiff's discharge from employment.

12. Defendant Martin, the Director, knowingly and/or recklessly permitted the disparate treatment of the Plaintiff and the hostile work environment that he suffered to continue and took no steps to curtail or remedy the discrimination and retaliation. Further, Defendant Martin along with his subordinate managers terminated Plaintiff's employment on January 31, 2018 on false and pretextual grounds of alleged insubordination and being absent from work without approval when neither of these are factually true or supported as any type of actual policy violation. To reiterate THERE WAS NO POLICY governing the actions of the Plaintiff (and thus not policy violation to support the discharge) and/or the common and accepted practice and procedure with respect to getting meals between regular and overtime shifts was followed in Plaintiff's case without incident. The actions of both Defendant Martin and his subordinate managers or supervisors, including McAnally, were deliberate, willful, intentional, and calculated to violate the law and to harm the Plaintiff. Defendant Martin set up the Plaintiff by deliberately placing Plaintiff under the supervision of McAnally even though Martin knew specifically, as a result of Plaintiff's complaints, that McAnally was harassing and discriminating against Plaintiff. Defendant Martin knew about the hostile work environment created against Plaintiff by McAnally due to Plaintiff's numerous complaints over the years and yet he deliberately and purposely sought to retaliated against Plaintiff for his protected oppositional activities by

6

attempting to place and placing Plaintiff under McAnally's supervision where he knew that Plaintiff would be harmed. Plaintiff spoke to Defendant Martin a number of times and Defendant Martin never helped the Plaintiff even though he had the power to do so. Indeed Defendant Martin was known to brag to others that he had been brought into the department to "fire people." Defendant Martin also played favorites and promoted non-African American employees much more easily and sooner than black employees. White employees were permitted by Defendant Martin to transfer freely and come and go as they pleased while African Americans such as Plaintiff were not promoted quickly and not permitted to transfer as freely and easily and non-blacks. Defendant Martin and other managers and supervisors concealed and covered up sexual misconduct by Defendant McAnally against a female employee whom he had been sexually harassing. Defendant Martin would not cover up such egregious, even criminal, conduct by African American employees like he did for McAnally. Defendant Martin also promotes and accepts nepotism by white or non-African American employees who have their children and family members hired into the department while black employees are not permitted the same ability to have their family members hired. Defendant Martin discriminates against black employees and he discriminated against, harassed, and retaliated against Plaintiff on the basis of Plaintiff's race.

13. As detailed and set forth herein, along with many other instances too numerous to set forth in total, Defendants treated Plaintiff less favorably than they treated similarly situated non-black co-workers who made actual policy violations and acted in clearly insubordinate ways and who were not fired. The discriminatory treatment of Plaintiff by the Defendants was because of or on account of, in whole or in part, the Plaintiff's race and/or color and/or retaliation for his opposition to discrimination or participation in proceedings related to alleged Title VII violations. The conduct that Plaintiff suffered was a continuing violation of Title VII of the

7

Civil Rights Act of 1964, NRS Chapter 613, 42 U.S.C. § 1983, and the Civil Rights Act of 1866, 42 U.S.C. § 1981.

14. The Plaintiff filed a formal Charge of Discrimination on the basis of Race and Color and Retaliation April 6, 2018 with EEOC Charge No. 487-2018-00549 which is incorporated here by reference as if fully set forth herein.

15. Defendant subjected Plaintiff to different, unequal and discriminatory treatment which included but was not limited to increased scrutiny of Plaintiff's work, humiliating and condescending treatment, purposeful economic deprivation, derogatory comments, and undermining and subversion of Plaintiff's attempts to remedy the discrimination.  This different, unequal and discriminatory treatment in his employment was on account of and directly connected with or related to Plaintiff's African Origin, Color, Race, and/or Ethnicity.

16. Defendant subjected Plaintiff to different, unequal and discriminatory treatment which included but was not limited to increased scrutiny of Plaintiff's work, humiliating and condescending treatment, purposeful economic deprivation, derogatory comments, and undermining and subversion of Plaintiff's attempts to remedy the discrimination.  This different, unequal and discriminatory treatment in his employment was on account of and directly connected with or related to Plaintiff's protected opposition to discrimination and/or his participation in proceedings to enforce anti-discrimination laws including his previous charge of discrimination and retaliation (EEOC Charge No. 487-2016-00649 which is incorporated here by reference as if fully set forth herein) and the claims made in the U.S. District Court for the District of Nevada in case no. 2:16-cv-2027−JCM−VCF.

17. Defendant is required to comply with statutes prohibiting race and color discrimination and their related anti-retaliation provisions for both protected opposition activity and protected participation activity.

18. Plaintiff has exhausted all required administrative avenues. EEOC issued a Notice of Suit Rights on March 26, 2019 and Plaintiff received it in the mail approximately three days later. This action was timely filed.

19. The relevant and pertinent portions of the Complaint filed in case no. 2:16-cv-2027−JCM−VCF in the U.S. District Court, District of Nevada on or about August 29, 2016 are incorporated here by this reference as if fully set forth herein.

**FIRST CLAIM:  RACE OR COLOR DISCRIMINATION IN VIOLATION OF TITLE VII, CIVIL RIGHTS ACT OF 1964 AND NRS CHAPTER 613.  (AGAINST CLARK COUNTY ONLY)**

All other Paragraphs of this Complaint are expressly incorporated here by reference as if fully reasserted, alleged, and set forth herein.

20. Plaintiff, at all times, has performed his job at or above a level that his employer had a reasonable right to expect.

21. Plaintiff was discriminated against by the Defendants in the terms, conditions, privileges, and benefits of his employment based upon his race or color.

22. Plaintiff was retaliated against after he opposed and complained about the discriminatory treatment that he received.

23. Plaintiff suffered one or more adverse job consequences intentionally imposed by the Defendants. These consequences were of the type that would tend to discourage similarly situated employees from complaining about or opposing illegal discrimination.

24. One or more of Plaintiff's co-workers who were not of Plaintiff's race and/or color were treated more favorably in the terms and conditions of their employment than Plaintiff was treated. By way of example this included, but was not limited to, the Plaintiff being repeatedly denied promotions and transfers that he was well-qualified for and desired and these promotions or transfers were given or allowed to Plaintiff's co-workers who were not in his protected class. At

9

one point Plaintiff was at the top of the list of persons to be promoted and the Defendants threw away the list to avoid promoting Plaintiff and promoted a non-African American instead. This happened on other occasions when other African-Americans were at the top of the promotion list as well. This was discriminatory based on race.

25. Plaintiff's employment was terminated by Defendant in August 2015 when he was fired due to discrimination based on race, color, and ethnicity and in retaliation for Plaintiff having opposed and complained about the discriminatory and illegal treatment. Although Plaintiff was reinstated in October 2015, Plaintiff was again fired on false and pre-textual grounds on January 31, 2018.

26. The Plaintiff was subjected to Race Harassment in that the Defendants created a hostile work environment, as set forth in detail herein as well as other occasions and instances, that adversely impacted the terms and conditions of the Plaintiff's employment and made it more difficult for him to perform the duties of his job. The acts, omissions, and behavior of the Defendants was objectively and subjectively offensive and was severe or pervasive in nature.

27. Defendant's discriminatory and retaliatory treatment of the Plaintiff in his employment was in violation of Title VII of the Civil Rights Act of 1964.

28. Plaintiff suffered injury to his reputation, embarrassment, humiliation, mental anguish and suffering, inconvenience, emotional distress, and other cognizable general damages as a direct and proximate result of Defendant's actions. The amount of these damages is a question of fact that may only be ascertained by the jury at trial.

29. Plaintiff has suffered and will suffer lost wages and benefits of employment as a direct and proximate result of the actions of the Defendants.

30. Plaintiff has been required to hire an attorney and expend fees and costs to pursue his rights through this action.

31. The actions of the Defendants were willful, malicious, oppressive, and calculated to discourage Plaintiff and other of Defendants' employees from pursuing their rights under Federal and Nevada law.

### SECOND CLAIM:  RACE DISCRIMINATION AND HOSTILE WORK ENVIRONMENT RACE HARASSMENT IN VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1981

All other Paragraphs of this Complaint are expressly incorporated here by reference as if fully reasserted, alleged, and set forth herein.

32. Defendants have violated the Civil Rights Act of 1866, as amended, through the actions of their managers and officials in failing to provide equal contractual opportunities to black African-American employees, specifically including the Plaintiff.

33. Defendants intentionally retaliated against the Plaintiff for his opposing their discriminatory and illegal conduct under the Act and for demanding equal treatment in his contractual relations with the Defendant Clark County.

34. Defendants created a hostile work environment based on Plaintiff's race which included acts and deliberate omissions that were harmful to the Plaintiff and were engaged in such a severe or pervasive way that the Plaintiff's terms and conditions of employment were adversely affected. The behavior of the Defendants was both objectively offensive and subjectively offensive.

35. Plaintiff has been harmed by Defendant's actions, has suffered damages and is entitled to be fully compensated therefor.

36. The actions of the Defendant were willful, malicious, oppressive, and calculated to discourage Plaintiff and other of Defendant's employees from pursuing their rights under Federal law. The Individual Defendants should be subjected to Punitive and Exemplary damages to deter future conduct of this sort.

11

**THIRD CLAIM: VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983**

All other Paragraphs of this Complaint are expressly incorporated here by reference as if fully reasserted, alleged, and set forth herein.

37. 42 U.S.C. § 1983 states in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

38. Defendants have subjected the Plaintiff to a deprivation of his rights, privileges, or immunities secured to him by the Constitution and laws including, but not limited to, his rights to equal contractual relations under 42 U.S.C. § 1981. Defendants have done this under color of law under a statute, ordinance, regulation, custom, or usage of the State of Nevada including, but not limited to the provisions of NRS Chapter 289.

39. The failure to treat the Plaintiff equally with his non-black, non-African American, co-workers is not only a custom or usage engaged in by Clark County Department of Juvenile Justice Services, it also arises to the level of being a *de facto,* if not express, policy of Defendant Clark County. Numerous other black, African American employees including but not limited to Reginald Sullivan, Aldric Jordan, Daryl Turner, Autney Wren, Audrei Lacy, Dionne Jackson, Johnny Kendrick, Phillip Campbell, Robert Grundy, Nathanial Richards, and Daniel Stewart have also suffered systematic discrimination and retaliation in that workplace such that it is clear that this is a custom or usage to discriminate and retaliate against black African American employees. It is so prevalent that it has become policy.

40. In addition to all remedies at law available to the Plaintiff, the Plaintiff also seeks injunctive relief from this court requiring Defendants to take all steps necessary to evaluate the existence of conduct in its workplace which might constitute discrimination and institute effective

educational and prevention programs to prevent or remedy conduct in its workplace which might constitute race discrimination; and to take appropriate disciplinary action against all employees who participated in, tolerated or failed to act to prevent, stop, or remedy the acts of race discrimination against Plaintiff.

## FOURTH CLAIM:  RETALIATION IN VIOLATION OF 42 U.S.C. §1981

All other Paragraphs of this Complaint are expressly incorporated here by reference as if fully reasserted, alleged, and set forth herein.

41. Plaintiff was retaliated against after he opposed and complained about the racially discriminatory treatment that he received in Defendants' workplace.

42. Plaintiff suffered one or more adverse job consequences intentionally imposed by the Defendants.  These consequences were of the type that would tend to discourage similarly situated employees from complaining about or opposing illegal discrimination.

43. Plaintiff's employment was terminated by Defendants in August 2015 when he was fired due to discrimination based on race and retaliation for Plaintiff having opposed and complained about the discriminatory and illegal treatment.

44. The Plaintiff was further retaliated against by the Defendant willfully, embarrassingly, and harassingly, refusing to promote or grant requested transfers to the Plaintiff because he had opposed the Defendants' policies, practices, and actions made illegal under 42 U.S.C. §1981.

45. Defendants' discriminatory and retaliatory treatment of the Plaintiff in his employment was in violation of 42 U.S.C. §1981.

46. Plaintiff suffered harm to his reputation, mental anguish, humiliation and emotional distress as a direct and proximate result of Defendants' actions.

47. The Plaintiff suffered damages including, but not limited to, lost wages, lost benefits of employment, emotional distress, mental anguish, humiliation, embarrassment, and other

general damages in amounts to be proven at trial.

48. Plaintiff has been required to hire an attorney and expend fees and costs to pursue his rights through this action.

49. The actions of the Defendants were willful, malicious, oppressive, and calculated to discourage Plaintiff and other of Defendants' employees from pursuing their rights under Federal and/or Nevada law.  The Individual Defendants should be subjected to Punitive and Exemplary damages to deter future conduct of this sort.

**FIFTH CLAIM:  RETALIATION IN VIOLATION OF TITLE VII OF THE CIVL RIGHTS ACT OF 1964 AS AMENDED, 42 U.S.C. §2000e (Against Clark County)**

All other Paragraphs of this Complaint are expressly incorporated here by reference as if fully reasserted, alleged, and set forth herein.

50. This claim is expressly pled in the alternative pursuant to NRCP Rule 8.

51. Plaintiff was fired in violation of both the opposition clause and the participation clause contained within Title VII of the Civil Rights Act of 1964.

52. Plaintiff repeats and re-alleges each and every pertinent allegation contained in and every other pertinent paragraph contained in this Complaint, as if set forth fully herein.

53. The aforementioned state and federal statutes prohibiting discrimination also separately prohibits employers from retaliating against any individual engaging in protected activity which includes reporting, complaining about, or raising concerns, and opposing possible discrimination or acts which might constitute discrimination. It also prohibits retaliation for participating in the mechanisms of enforcement for Title VII.

54. Defendants subjected Plaintiff to retaliation after, and as a result of, his engaging in protected activity which is more fully detailed above.

55. The actions and conduct by Defendants would deter Plaintiff and others from reporting,

complaining, opposing or otherwise engaging in protected conduct, thus constituting illegal retaliation under Title VII which has been held to apply any time employer reprisal conduct related to complaints or protected actions "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern Co. v. White,* 548 U.S. 53 (2006).

56. Defendants failed to take reasonable actions to prevent retaliation against Plaintiff. To Plaintiff's knowledge and perception, after he complained and otherwise engaged in protected activities, no preventive or remedial actions were taken to prevent retaliation.

57. The aforementioned action and conduct of Defendants constitutes illegal retaliation, and/or retaliatory harassment, prohibited under state and federal law.

58. As a direct and proximate cause of Defendants wrongful conduct and illegal discrimination in the form of retaliation, Plaintiff has been substantially harmed, economically and emotionally, and is, therefore, entitled to be fully compensated and receive all appropriate equitable and legal remedies recognized under the law.

59. As a result of Defendants' acts described in this complaint, Plaintiff has been forced to engage the services of an attorney and expend costs to pursue and protect his rights under the law.

## III. DEMAND FOR JUDGMENT FOR RELIEF

WHEREFORE, the Plaintiff Prays Judgment against the Defendant and requests relief as follows:

1. For all legal and equitable remedies available under the law controlling the claims set forth herein;
2. For actual and compensatory damages in an amount to be determined by a jury at trial;
3. For general damages in an amount to be determined by a jury at trial;
4. For nominal damages if appropriate;

5. For Punitive and/or Exemplary damages from the Individual Defendants in an amount to be determined by a jury at trial;
6. For an order of reinstatement;
7. For Attorney's fees;
8. For costs of suit;
9. For pre-judgment interest;
7. For a trial by jury of all issues that may be tried to a jury;
8. For injunctive relief as set forth herein;
9. For such other and further relief as the court may deem just and equitable.

DATED this 2nd day of October, 2019.

       /s/ James P. Kemp
JAMES P. KEMP, ESQUIRE
Nevada Bar No. 006375
KEMP & KEMP
7435 W. Azure Drive, Suite 110,
Las Vegas, NV  89130
(702) 258-1183/ (702) 258-6983 (fax)
jp@kemp-attorneys.com
Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

This is to certify on the date indicated below the within and foregoing document was served via the court's CM/ECF system to the following persons or parties:

Steven B. Wolfson, Esq.
Scott R. Davis, Esq.
CLARK COUNTY DISTRICT ATTORNEY
500 S. Grand Central Pkwy., Suite 5075
Las Vegas, NV 89135-2215

DATED October 2, 2019.

/s/ James P. Kemp
JAMES P. KEMP, ESQ.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. AZURE DRIVE, SUITE 110
LAS VEGAS, NEVADA 89130
TEL. (702) 258-1183 ♦ Fax (702) 258-6983